IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | | |
|---|---|---|
| JONATHAN LEE BABB, | ) | |
|     Plaintiff, | ) | Civil Action No. 7:22-cv-00590 |
| | ) | |
| v. | ) | |
| | ) | |
| CPT. HAYES, *et al.*, | ) | By: Elizabeth K. Dillon |
|     Defendants. | ) | United States District Judge |

**MEMORANDUM OPINION**

Plaintiff Jonathan Lee Babb, proceeding *pro se*, filed this civil rights action pursuant to 42 U.S.C. § 1983. His original complaint named only one defendant: "Southwest Virginia Regional Jail Authority-Duffield Jail." (Compl. 1, Dkt. No. 1.) The court entered a conditional filing order, notifying Babb that his complaint failed to name a proper defendant or to state a valid claim against that defendant and directing him to file an amended complaint.

Babb has filed an amended complaint naming a number of individual defendants, all of whom were employed at the Southwest Virginia Regional Jail in Duffield ("the Jail"). The case is before the court for review pursuant to 28 U.S.C. § 1915A(a) and 42 U.S.C. § 1997e(c). For the reasons set forth below, the court concludes that Babb has failed to state a claim for which relief can be granted, and his claims must be dismissed.

I.     BACKGROUND

Babb's complaint alleges that he was taken to the hospital on September 22, 2022, after being housed at the Jail for four months. Upon arrival, he learned that he had a "large infection mass" on his face, and he tested positive for COVID.[1] (Am. Compl. 5, Dkt. No. 9.) Four days

---

[1] Although Babb summarily states that the infection and COVID were "caused by" conditions at the Jail, he does not identify any particular conditions prior to his hospitalization, nor any actions by any particular defendants, that he believes caused his infection. A bald assertion that he became infected as a result of "unsanitary" conditions, without more and without identifying any defendants who knew of those conditions and

later, he was released from the hospital and taken back to the Jail, where he was housed in the "court holding cell on quarantine." (*Id.* at 5.) Babb complains about a number of conditions to which he was subjected for part or all of the time he was in quarantine in the court holding cell—a six-day period lasting from September 26, 2022, through October 1, 2022. Specifically, he alleges that:

- on a number of these dates, food service workers did not wear gloves or hairnets;

- he was served trays and drinks on the floor, and the cups often did not have lids on them;

- on September 30, 2022, he was missing a dinner roll and was told he had to "do without" that one night;

- he was denied "media sources of any kind" while on quarantine, including newspapers, and when he asked for a newspaper, he was told that the court holding cell didn't have one or told that the officers could not find him one;

- he was denied access to the phone and the kiosk on several days;

- he was denied nail clippers, razors, and laundry service;

- his repeated requests for a "cleaning cart" so he could clean the court holding cell were denied; and

- he was denied all recreation and out-of-cell time.

(*See generally id.* at 5–10.)

The amended complaint identifies certain defendants as persons who either served him food on the floor (or without wearing gloves or a hair net), other persons from whom he requested media, phone access, personal toiletry supplies, or the ability to clean his cell, and other individuals who allegedly denied those requests. He also claims that defendant Cpt. Hayes "knew about the [un]sanitary conditions" and about how Babb was being treated, but did

---

failed to take action to correct them, does not state an Eighth Amendment violation. Thus, and because all of his specific allegations relate to the period *after* his return from the hospital, the court construes his claims as being based only on the later period.

nothing. (*Id.* at 5.) He asserts that Hayes is responsible for his officers' actions and their alleged mistreatment of Babb. (*Id.*)

Babb also seeks $30,000 in nominal, compensatory, and punitive damages "for them intentionally not sending [his] mail still." (*Id.*)

## II. DISCUSSION

Pursuant to 28 U.S.C. § 1915A(a), the court must conduct an initial review of a "complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity." *See also* 42 U.S.C. § 1997e(c)(1) (requiring the court to dismiss any § 1983 case brought with respect to "prison conditions" if it is frivolous or fails to state a claim upon which relief can be granted). Pleadings of self-represented litigants are given a liberal construction and held to a less stringent standard than formal pleadings drafted by lawyers. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam). Liberal construction does not mean, however, that the court can ignore a clear failure in pleadings to allege facts setting forth a claim cognizable in a federal district court. *See Weller v. Dep't of Social Servs.*, 901 F.2d 387, 391 (4th Cir. 1990). Applying these standards to Babb's complaint, the court concludes that it fails to state a claim for which relief can be granted. Thus, it must be summarily dismissed pursuant to 28 U.S.C. § 1915A(b)(1) and 42 U.S.C. § 1997e(c)(1).

Babb does not set forth specific legal claims or refer to specific laws or provisions he believes were violated. The court construes his amended complaint, however, as asserting several different Eighth Amendment conditions-of-confinement claims, all arising in the six-day period while he was being quarantined.[2] The court also construes his amended complaint as

---

[2] Babb does not challenge his placement in quarantine. Indeed, he admits that he was being held in quarantine as a medical precaution because he had an infection and had tested positive for COVID.

including a claim that the denial of access to a newspaper, his mail, and media during that same limited period violated his First Amendment rights.[3]

### A. Eighth Amendment Conditions-of-Confinement Claims

"To state a claim under § 1983[,] a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *Loftus v. Bobzien*, 848 F.3d 278, 284–85 (4th Cir. 2017) (internal quotation marks omitted).

The Eighth Amendment protects prisoners from cruel and unusual living conditions. *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981). But "the Constitution does not mandate comfortable prisons," and conditions that are "restrictive and even harsh . . . are part of the penalty that criminal offenders pay for their offenses against society." *Id.* at 347–49. To sustain an unconstitutional conditions claim, a prisoner must show that: (1) objectively, the deprivation was sufficiently serious, in that the challenged, official acts caused denial of "the minimal civilized measure of life's necessities"; and (2) subjectively, the defendant prison officials acted with "deliberate indifference to inmate health or safety." *Farmer v. Brennan*, 511 U.S. 825, 834 (1994) (citations omitted).

To satisfy the first element, the prisoner must show "significant physical or emotional harm, or a grave risk of such harm," resulting from the challenged conditions. *Shakka v. Smith*, 71 F.3d 162, 166 (4th Cir. 1995). To establish the second element of deliberate indifference, a plaintiff must show that the defendant was personally aware of facts indicating a substantial risk of serious harm and that the defendant must have actually recognized the existence of such a

---

[3] Babb states repeatedly that he was treated "inhuman" and that his treatment shows the officers are biased against him. (*See, e.g.*, Am. Compl. 5, 6, 7.) He does not allege that the bias stemmed from his being a part of any particular group or because of any particular reason. Thus, the court does not construe his amended complaint as asserting an Equal Protection claim.

risk. *See, e.g., Farmer*, 511 U.S. at 838–840; *Conner v. Donnelly*, 42 F.3d 220, 222 (4th Cir. 1994). The plaintiff also must show that the defendant subjectively recognized that his actions were inappropriate in light of that risk. *Parrish v. Cleveland*, 372 F.3d 294, 303 (4th Cir. 2004) (citation omitted).

Babb's complaint fails to satisfy these standards. Most significantly, it fails to identify a deprivation that is sufficiently serious so as to deprive him of "the minimal civilized measure of life's necessities." *Farmer*, 511 U.S. at 834. He also has not identified any "significant emotional or physical harm," nor do the conditions about which he complains appear to create a "grave risk" of any such harm. *See Shakka*, 71 F.3d at 166. The court briefly discusses each of the challenged conditions.

1. **Food and Food Service**

First of all, Babb's allegations as to his food do not state a constitutional claim. As noted, he alleges that his food trays and drinks were served from the floor, his drinks lacked lids, the serving officers failed to wear hairnets or gloves, and that he was on one occasion deprived of his dinner roll.

"It is well-established that inmates must be provided nutritionally adequate food, prepared and served under conditions which do not present an immediate danger to the health and well-being of the inmates who consume it." *Shrader v. White*, 761 F.2d 975, 986 (4th Cir. 1985). Prison officials satisfy their obligation by providing some food that the prisoner is able to eat without compromising his health. *Scinto v. Stansberry*, 841 F.3d 219, 233 (4th Cir. 2016). A prisoner is entitled, therefore, only to reasonably adequate food. *Hamm v. DeKalb County*, 774 F.2d 1567, 1575 (11th Cir. 1985). "The fact that the food occasionally contains foreign objects or sometimes is served cold, while unpleasant, does not amount to a constitutional deprivation."

5

*Id.; Bedell v. Angelone*, No. 2:01CV780, 2003 WL 24054709, at *14 (E.D. Va. Oct. 3, 2003) (explaining that short-lived problems with food service and isolated instances of food containing foreign objects do not state cognizable claims under the Eighth Amendment). Based on this authority, the fact that one of his dinners was missing a roll does not amount to a constitutional deprivation.

Likewise, Babb's allegations regarding the manner in which his food was served also do not rise to the level of a constitutional violation. In *Reed v. Olson*, for example, the court granted summary judgment for defendants where plaintiff alleged that he was served cold food, served food on unsanitary trays, that the food had objects in it, and that food service workers did not wear gloves, hairnets, or head coverings. *Reed*, No. 4:09-CV-3126-JFA-TER, 2011 WL 765559, at *1 (D.S.C. Jan. 19, 2011), *report and recommendation adopted,* No. 4:09-3126-JFA-TER, 2011 WL 742509 (D.S.C. Feb. 24, 2011). *See also Greene v. Gregory*, No. 1:20CV522 (LMB/TCB), 2022 WL 10584456, at *11 (E.D. Va. Oct. 18, 2022), *appeal docketed*, No. 22-7475 (4th Cir. Dec. 30, 2022) (allegations that food service workers served food wearing the same gloves they had worn while cleaning and that they physically touched his food, did not state a constitutional claim, particularly in the absence of any allegation of resulting injury). Although the conditions Babb describes are not ideal and may not be the best sanitary practices, they do not rise to the level of a constitutional violation. And again, he has not alleged any injury or grave risk of injury from these conditions, and the conditions only lasted a short time— less than a week—while he was in quarantine.

2. **Deprivation of cleaning supplies, nail clippers, and razor**

As to Babb's claim that he was denied a cleaning cart for his cell for those six days and that he was deprived of nail clippers and a razor during his stay in quarantine, those allegations,

too, fail to rise to the level of a constitutional claim, especially because Babb does not allege any harm from those conditions. *See Beverati v. Smith*, 120 F.3d 500, 504 & n.5 (4th Cir. 1997) (noting that conditions, including not receiving clean clothing, linen, or bedding as often as required by prison regulations, failed to state an Eighth Amendment claim because there was no serious physical or emotional injury to plaintiffs or risk of such harm). Other courts have rejected similar claims. *See, e.g.*, *Johnson v. Fields*, No. 2:14-cv-38-FDW, 2017 WL 5505991, at *10 (W.D.N.C. Nov. 16, 2017) ("Plaintiff's claim that he was denied a shower and clean clothes for twelve days is insufficient as a matter of law to maintain an Eighth Amendment claim."); *DeLoach v. S.C. Dep't of Corr.*, No. 4:08-3113-HMH-TER, 2009 WL 1651452, at *1–2 (D.S.C. June 11, 2009) (dismissing Eighth Amendment claim alleging that plaintiff was denied a new jumpsuit and hygiene package for a period of thirty days), *aff'd* 355 F. Appx 681 (4th Cir. 2009).

As courts have reasoned, the deprivation of a toothbrush or hygiene kit for a limited time does not constitute an Eighth Amendment violation. *See Canterbury v. W. Reg'l Jail Auth.*, No. 3:18-CV-01440, 2019 WL 6545328, at *13 (S.D.W. Va. Nov. 7, 2019) (reasoning that although an extended deprivation of hygiene items, including soap and toilet paper, that causes injury to an inmate might establish an Eighth Amendment violation, the short-term deprivation of such items without any resulting injury does not), *report and recommendation adopted*, No. CV 3:18-1440, 2019 WL 6598349 (S.D.W. Va. Dec. 4, 2019); *Binns v. Clarke*, No. 7:12-cv-00162, 2012 WL 1439258, at *3 (W.D. Va. Apr. 25, 2012) (concluding that plaintiff's allegation that he was not given access to water, toilet paper, soap, toothpaste, or a toothbrush while in a "strip cell" for three days did not rise to the level of an Eighth Amendment violation); *Gilland v. Owens*, 718 F. Supp. 665, 685 (W.D. Tenn. 1989) (addressing claim that inmates in one part of the jail were

occasionally not furnished toilet paper, towels, sheets, and blankets for seventy-two hour stays (which sometimes lasted longer) and reasoning that "[s]hort term deprivations of toilet paper . . . and the like do not rise to the level of a constitutional violation").

Consistent with this authority, a six-day deprivation of nail clippers, other hygiene products, and access to a cleaning cart is not sufficiently grave to state an Eighth Amendment claim.

3. **Deprivation of recreation and out-of-cell opportunities**

Babb also alleges that he was denied recreation and out-of-cell time, which meant he was unable to exercise out of his cell. Being denied the ability to leave one's cell and the denial of exercise opportunities, at least for an extended period of time, can give rise to an Eighth Amendment violation. *Mitchell v. Rice*, 954 F.2d 187, 191 (4th Cir. 1992) (explaining that while the denial of out-of-cell exercise opportunities is not *per se* unconstitutional, a "complete deprivation of exercise for an extended period of time violates [the] Eighth Amendment"). In *Mitchell*, the court concluded that seven months without out-of-cell exercise could potentially violate constitutional standards and that officials were not entitled to qualified immunity on the issue. *Id.* at 191–93; *see also Lyles v. Stirling*, 844 F. App'x 651, 654 (4th Cir. 2021) ("Denying an inmate out-of-cell exercise for 10 months is objectively serious under the Eighth Amendment.").

"In considering the totality of the circumstances" surrounding such denials, the court must "look at the 'overall duration of incarceration, the length of time for which prisoners are locked in their cells each day, and the practical opportunities for the institution to provide prisoners with increased exercise opportunities.'" *Lyles*, 844 F. App'x at 653 (quoting *Mitchell*, 954 F.2d at 191). The duration here—six days—is significantly shorter than cases where courts

have found a potential violation. *Compare Mitchell*, 954 F.2d at 191–93; *Lyles*, 844 F. App'x at 654. And again, Babb does not allege any harm or injury (or any risk of grave harm or injury) from this brief denial of recreation and out-of-cell opportunities.

**B. Denial of access to newspaper, media, and kiosk**

Babb also alleges that he was denied access to a newspaper, media, and the kiosk (which allows mail access) for the six days he was in quarantine. Again, the temporary nature of these denials is fatal to his claim.

To the extent that his allegation is that his access to his mail was limited, a prisoner's receipt of non-legal mail implicates First Amendment rights. *See Woolfork v. Chesapeake Mail Clerk*, No. 1:09CV198 AJT/TCB, 2009 WL 7024994, at *1 (E.D. Va. Apr. 15, 2009), *aff'd*, 332 F. App'x 71 (4th Cir. 2009). But, as with Babb's other claims, the period of time at issue here (less than a week while he was in a medical quarantine) is too insignificant to give rise to a constitutional violation. *See id.* (holding that interference with an inmate's access to mail, where it lasted a short period, did not state a constitutional violation). As the *Woolfork* court explained, courts "uniformly recognize that a relatively isolated or short-term disruption of a prisoner's receipt of his mail, legal or otherwise, does not rise to the level of a constitutional deprivation." *Id.* (citations omitted). This includes periods longer than the six days at issue here. *Langlois v. Dane Co. Sheriff's Office*, 2008 WL 4722993 at *1 (W.D. Wis. Oct. 23, 2008) (holding that a single ten-day delay in prisoner's receipt of personal mail was "too brief to violate the First Amendment"); *Harksen v. Braxton*, No. 7:04-cv-00243, 2004 WL 5645580 at *2 (W.D. Va. Nov. 9, 2004) (same as to 30-day retention of outgoing mail). Moreover, Babb does not allege that he was later unable to retrieve any of the mail he may have received during that time. Based

9

on his allegations, then, any incoming mail was merely delayed; there are otherwise no allegations of "interference."

Similarly, with regard to the denial of a newspaper, Babb was being held in a court holding cell as part of a quarantine policy, and he was told that there was no newspaper for that particular area of the facility. Presumably, those cells typically are designated for short-term use, as inmates are held there awaiting court appearances, not housed there long-term. Regardless, Babb he offers no facts to suggest that he was entitled to a newspaper while in that facility and intentionally denied one. Nor can the court find that a brief delay in accessing reading material violated his First Amendment rights.

To the extent it was a *policy* that resulted in the deprivation of his access to a newspaper for six days, as opposed to intentional conduct by specific people, the Supreme Court has upheld prison regulations that restrict access to reading material for certain reasons. *See, e.g.*, *Beard v. Banks,* 548 U.S. 521 (2006) (upholding as constitutional a policy that prohibited inmates in the most restrictive category from having access to newspapers, magazines, and photographs until they graduate to a less restrictive level); *Turner v. Safley,* 482 U.S. 78 (1987). In *Turner,* the Court explained that "when a prison regulation impinges on inmates' constitutional rights, the regulation is valid if it is reasonably related to legitimate penological interests." 482 U.S. at 89. The Supreme Court articulated four factors to determine if a prison regulation is reasonable: (1) whether there is a valid, rational connection between the regulation and "the legitimate governmental interest put forward to justify it"; (2) "whether there are alternative means of exercising the right that remain open to prison inmates"; (3) how accommodating the asserted constitutional right will impact guards and other prisoners; and (4) whether there are ready alternatives to the regulation. *Id.* at 89–91 (citation omitted). The Supreme Court has also

advised that when determining whether a prison regulation is reasonable, courts "must accord substantial deference to the professional judgment of prison administrators, who bear a significant responsibility for defining the legitimate goals of a corrections system and for determining the most appropriate means to accomplish them." *Overton v. Bazzetta,* 539 U.S. 126, 132 (2003).

Notably, at least one rational is obvious for the policy at issue, to the extent one existed here: preventing the sharing of newspapers with persons being held in quarantine may be likely to reduce the spread of illness. Furthermore, it bears repeating that Babb was quarantined only for a short time, and thus was deprived of access to newspapers only for a short time. Thus, he experienced not a long-term deprivation, but only a brief delay in his ability to access such publications, a factor relevant to the *Turner* inquiry, which looks at alternative means of exercising the right. Although Babb could not see a newspaper for that brief period, he does not allege that he was prevented from receiving and reading newspapers once released from quarantine.

Consistent with these principles, other courts, too, have rejected First Amendment challenges to policies that have resulted in the temporary denial of reading materials. *E.g., Collins v. Padula*, No. CA 2:12-3112-DCN-BHH, 2014 WL 1319103, at *15 (D.S.C. Feb. 11, 2014) (collecting authority), *report and recommendation adopted in part,* No. 2:12-CV-03112-DCN, 2014 WL 1318978 (D.S.C. Mar. 31, 2014), *aff'd,* 582 F. App'x 258 (4th Cir. 2014); *Pelzer v. McCall*, No. 8:10-CV-1603-MBS-JDA, 2011 WL 4549387, at *4 (D.S.C. June 29, 2011) (upholding policy that restricted high-security inmates from having magazines and newspapers), *report and recommendation adopted*, No. CA 8:10-1603-MBS, 2011 WL 4549368 (D.S.C. Sept. 30, 2011).

To summarize, even if Babb had alleged a policy of denying newspapers to quarantined inmates, it is his burden to support his assertion that the policy is unconstitutional, because it is his burden to disprove the validity of the policy under *Turner* and *Overton*. *Desper v. Clarke*, 1 F.4th 236, 244–45 (4th Cir. 2021), *cert. denied*, 142 S. Ct. 811 (2022). He has not alleged facts sufficient to support any such assertion. Thus, any First Amendment claim fails.

### III. CONCLUSION

For the foregoing reasons, the court will summarily dismiss Babb's complaint, pursuant to 28 U.S.C. § 1915A(b)(1) and 42 U.S.C. § 1997e(c)(1), for failing to state a claim upon which relief may be granted.

An appropriate order will be entered.

Entered: May 8, 2023.

/s/ Elizabeth K. Dillon
Elizabeth K. Dillon
United States District Judge